# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JAPHETH WARNER,**

**Plaintiff,**

**v.**

**LINEAGE LOGISTICS, LLC,**
Serve at:
Corporation Service Company
2900 SW Wanamaker Drive, Ste. 204
Topeka, Kansas 66614

**Defendants.**

**JURY TRIAL DEMANDED**

Civ. No.: _____

## COMPLAINT

COMES NOW Plaintiff, Japheth Warner, by and through his attorneys, for his cause of action against Lineage Logistics, LLC ("Lineage"), states as follows:

## Parties

1.      Plaintiff is a citizen of the United States and currently resides in Lenexa, Kansas.

2.      Within the meaning of Title VII, 42 U.S.C. §2000e, Plaintiff was an "employee" during all times relevant to this Complaint.

3.      Defendant Lineage Logistics, LLC is a company authorized and doing business in the State of Kansas. Defendant Lineage's headquarters is located at 46500 Humboldt Dr., Novi, Michigan 48377.

4.      Plaintiff worked for Defendant at its Edwardsville, Kansas location from approximately October 3, 2016, to approximately December 27, 2017.

5.      Lineage is an "employer" within the meaning of Title VII because at all relevant times, Lineage employed more than fifteen employees in an industry affecting commerce.

6. Defendant Lineage's employees, supervisors, and agents, at all times herein relevant, acted on Lineage's behalf, as Lineage's agent, with actual or apparent authority, and/or Defendant Lineage approved, condoned, or ratified their conduct.

### Jurisdiction and Venue

7. This Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1331, because it involves claims that arise under federal statutes, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 *et seq.* as amended, and 42 U.S.C. § 1981.

8. This Court has personal jurisdiction over Defendant Lineage because Defendant maintains minimum contacts within the state of Kansas by owning and managing a facility in Edwardsville, Kansas, in Wyandotte County, which lies within the United States District of Kansas.

9. Under 28 U.S.C. 1391(b), venue is proper in this Court because Defendant owns and/or manages a facility in Wyandotte County, Kansas, which lies within the District of Kansas. Further, venue is proper in this Court because a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district, Plaintiff was employed by Defendant within this judicial district, and Defendant's violations occurred within this judicial district.

### Administrative Procedures

10. On or about June 8, 2018, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") against Defendant Lineage on the basis of race discrimination and retaliation. *See **Charge of Discrimination***, Ex. A.

11. On or about May 14, 2019, the EEOC issued to Plaintiff his Notice of Right to Sue. Plaintiff received the Notice of Right to Sue on or about May 16, 2019. This lawsuit was filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue, which entitles Plaintiff

to commence an action regarding his claims. *See **Notice of Right to Sue***, Ex. B.

12.     The aforementioned Charges of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties. Accordingly, the scope of this Complaint may be, and is, as broad as the scope of an EEOC investigation that could have been reasonably expected to grow out of the Charge of Discrimination.

13.     Accordingly, Plaintiff has satisfied all private, administrative, and judicial prerequisites to the commencement of this action.

### General Allegations Common to All Counts

14.     The preceding paragraphs are fully incorporated as though fully set forth herein.

15.     Plaintiff is an African-American male.

16.     Defendant employed Plaintiff from approximately October 3, 2016 to December 27, 2017.

17.     Plaintiff worked as a Building Maintenance Technician at the facility located at 2350 S 98 St. Suite A, Edwardsville, Kansas 66111.

18.     Throughout his employment with Lineage, Plaintiff successfully performed the requirements of his job and was a dedicated and valuable employee.

19.     Plaintiff's supervisor at the time of his hire was Troy Stewart, Maintenance Manager.

20.     When he first started working for Defendant, Plaintiff was paid $19.10 per hour plus incentive bonuses.  Incentive bonuses were earned based on factors such as attendance and a lack of injuries.

21.     On April 1, 2017, Troy Stewart promoted Plaintiff to the "Lead Maintenance Technician" or "Lead" position.  However, Mr. Stewart told him that he would be on a 90-day

probation in his new position and would not receive a raise until that 90-day period elapsed. Mr. Stewart said that this probation was necessary because they wanted "to improve his attitude."

22. Plaintiff is aware of at least one Caucasian employee, John Oyer, who was given a similar promotion without the attached probationary period. Mr. Oyer was also given a $5 per hour raise that was effective immediately upon his promotion.

23. In July of 2017, after the 90-day probationary period had passed, Plaintiff asked Troy Stewart about the status of his promotion and raise. In response, Mr. Stewart said, "What? You were never promoted." Mr. Steward denied Plaintiff had ever been promoted even though Plaintiff had been carrying out Lead duties since the first of April. At that point Plaintiff ceased carrying out any further duties as a Lead.

24. In July of 2017, Robb Mowery became the General Manager of the Lineage branch in Edwardsville.

25. In August of 2017, Plaintiff received a complaint from Mr. Mowery about "how he was walking." Mr. Mowery seemingly had an issue with Plaintiff's gait and posture and told him to change it.

26. Shortly thereafter, Mr. Mowery also complained about how Plaintiff "laced his boots." Plaintiff's boots, which were issued by Lineage, were worn and broken and he was not able to lace them up correctly. When he requested new shoes, after waiting the requisite year, Mr. Mowery said to him, "Why do you need new boots, you don't even keep them laced up right? Hopefully this time you'll keep them laced-up correctly."

27. Plaintiff strongly believes that Mr. Mowery was attacking him for his appearance due to racist stereotypes about how African Americans dress. Mr. Mowery never made any complaints about Plaintiff's work.

28. On September 4, 2017, Lineage assigned a new Maintenance Manager, Lonny Delvecchio, to work as Plaintiff's supervisor.

29. Shortly after Mr. Delvecchio became Maintenance Manager, Plaintiff heard rumors that he and Mr. Racine Williams would be promoted to Lead Maintenance Technicians, known as "Leads."

30. Plaintiff heard that this promotion was discussed by Robb Mowery, Mr. Stewart, and Dale Slaughter, with Mr. Mowery electing to go forward with the plan because Plaintiff and Mr. Williams were "black alpha-males" and that they would "save the company from future lawsuits."

31. In October of 2017, Troy Stewart again approached Plaintiff and told him that he was being promoted, along with his co-worker, Racine Williams. Mr. Stewart told the two of them he would "rather have other guys, but we'll start with you."

32. Plaintiff was again told that he would be on a 90-day probation and that the "GM (Robb Mowery) is watching you." Mr. Stewart told Plaintiff that they were being promoted because "a lot of the maintenance guys weren't doing their jobs" and that Lineage needed "a couple of scary black guys to work as enforcers." At this point, Plaintiff and Mr. Williams began wearing the red vests which denote a Lead Building Maintenance Technician.

33. On November 8, 2017, Plaintiff and Mr. Williams, officially received their "promotions" (Plaintiff's second promotion to this position) and were told that these promotions were subject to a 90-day probationary period. They were told they would receive no raises until they completed the 90-day period. After this, Lonny Delvecchio began relying upon the two of them to carry out his day-to-day instructions, rather than giving the two of them specific authority.

34. Mr. Williams later asked his coworkers if it was standard to be placed on a 90-day

probation after receiving a promotion.  He was told that no one else had ever heard of such a thing happening and it was normal for the newly promoted employees to be given immediate raises and specific duties.

35.     Plaintiff and Mr. Williams were the first African-American employees to receive a promotion to Lead and there were no African-Americans in Lead or Management positions in the maintenance department. Plaintiff knows of only one African-American in a leadership position at the Edwardsville branch of Lineage.  This man, whose name Plaintiff does not know, would complain to Plaintiff and Mr. Williams about the disparate treatment he was subject to as an African American whenever the men would encounter each other in passing, making comments such as "[t]hey sure do expect a lot more from us, don't they?"

36.     After the November 8, meeting, Plaintiff went to HR with a coworker named Mike Reed to complain about a situation involving Mr. Williams where Plaintiff believed Mr. Williams was being treated unfairly.  Plaintiff understood that Mr. Williams was being punished as a Lead for something he had done prior to his promotion.  At this meeting, Steven Debeau told Plaintiff that he did not know about the promotions that had been given to Plaintiff and Mr. Williams and realized that the two men had not been given raises to go along with their promotions.  Mr. Debeau stated that Plaintiff and Mr. Williams would both receive an extra dollar per hour in their incentive pay for their promotions.  Plaintiff was told that he should have been given that raise upon his promotion. During a conversation with Mr. Williams, Mr. Debeau told Mr. Williams that after the 90-day probationary period Mr. Williams and Plaintiff would receive raises to their hourly rates and indicated that a probationary period for promotion to a lead position was "unheard of."

37.     On December 12, Plaintiff and Mr. Williams met with Lonny Delvecchio, Steven Debeau, and Robb Mowery to discuss their treatment with regards to their promotions and raises.

In this meeting, each of Plaintiff's and Mr. Williams' supervisors again claimed they had no idea about the promotions, even though Plaintiff and Mr. Williams had been wearing the red vests that corresponded to their Lead roles, their schedules had been changed to coincide with their positions, and there had been numerous written and oral communications about these promotions.

38. Plaintiff and Mr. Williams both told Robb Mowery that they were not interested in the promotions because they believed they were not being treated similarly to Caucasian employees who had received promotions without a probationary period. Mr. Williams then specifically asked "[w]hy aren't Caucasian employees in our department put on probation for lead positions?" At this point, Mr. Mowery responded, asking "Racine, you realize this is a right to work state?"

39. Plaintiff and Mr. Williams were then told they had until December 15 to either accept the Lead position with the probationary period or to not receive the promotion at all. Both Plaintiff and Mr. Williams turned down the promotion, as they both felt they were being treated unfairly. Plaintiff was also upset that he would not receive a raise in his hourly rate of pay, but that he would receive the money as "bonus pay." Plaintiff felt that the disparate treatment he and Mr. Williams received with respect to these "promotions" was based upon his and Mr. Williams' race.

40. On December 24, 2017, Lonny Delvecchio attempted to send Mr. Williams home when he arrived at work, stating "I don't need you so just go home." Plaintiff, however, talked Mr. Delvecchio into allowing Mr. Williams to stay. Because it was Christmas Eve, there was less work than usual.

41. Around noon on December 24, 2017, Plaintiff and Mr. Williams clocked out for lunch. Right before lunch they were told the plant would be closing at 2:00 pm because of the

holiday.  After Plaintiff and Mr. Williams clocked back in from lunch, Plaintiff spent some time checking on "downed doors." Plaintiff also left for 15 minutes with Mr. Williams to run to a convenience store.

42. On December 27, Mr. Debeau called Mr. Williams and told him that he was fired for "stealing time."  Mr. Debeau said that they saw his car leave for two hours during work on December 24.  Mr. Williams called Plaintiff to inform him of this. Plaintiff received a phone call shortly after from Mr. Debeau, in which he was told he was fired as well.  Plaintiff maintains that he only left for fifteen minutes on December 24, 2017.

43. Significantly, three other non-African American employees were disciplined, but not terminated, on December 27, 2017, for going to a bar for several hours on company time on December 23, 2017. One of the employees who left to go to the bar was John Woods, who had previously been warned about such behavior and had already received a two-day suspension and final warning. One of the other employees, Austin Woods, had previously been caught leaving the premises on company time and was allegedly already slated for termination prior to being caught; however, he was permitted to continue working for an additional several weeks to a month before he was finally terminated for sleeping on the job.  Plaintiff and Mr. Williams were the only employees fired on December 27, 2017, for "stealing time."

<u>**COUNT I**</u>
**Title VII – Unlawful Discrimination on the Basis of Race**

44. The above paragraphs are incorporated and re-alleged as though fully set forth herein.

45. Plaintiff is an African-American who was employed by Defendant. By virtue of his race, Plaintiff is a member of a class of persons protected by Title VII.

46. Defendant discriminated against Plaintiff in the terms and conditions of his

employment on the basis of his protected group status (African-American), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* as amended.

47. Defendant subjected Plaintiff to disparate treatment because of his race by conditioning Plaintiff's promotion to a lead position on a 90-day probationary period, unlike others promoted to a lead position, and refusing Plaintiff a raise in his hourly rate offered to others at the time of their promotions.

48. Defendant further subjected Plaintiff to disparate treatment because of his race by subjecting Plaintiff to unwelcome harassment and terminating Plaintiff's employment with Defendant.

49. Defendant knew or should have known of the harassment and disparate treatment and failed to take appropriate action to prevent such discrimination.

50. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff was deprived of income, as well as other benefits, monetary and non-monetary.

51. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, damage to his self-esteem, emotional distress, mental anguish, and related compensable damage.

52. Defendant failed to make good faith efforts to establish and to enforce policies that would prevent unlawful discrimination against its employees, including discrimination on the basis of race.

53. Defendant failed to properly train and/or otherwise inform its supervisors and employees of their duties and obligations under applicable civil rights laws, including Title VII.

54. Through Defendant's failure to take prompt and effective remedial action, in effect, Defendant condoned, ratified, and/or authorized the discrimination and harassment against

Plaintiff.

55. Defendant's conduct was willful, wanton, malicious, and showed a complete indifference to or conscious disregard for the rights of others, including Plaintiff's rights. Thus, an award of punitive damages is warranted in an amount that is sufficient to punish or to deter Defendant and others from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal, and punitive as are fair and reasonable; for his reasonable attorneys' fees and costs incurred herein; for interest as allowed by law, both pre-judgment and post-judgment; and for such other legal and equitable relief as the Court deems just and proper.

### COUNT II
### Title VII – Unlawful Retaliation

56. The above paragraphs are hereby incorporated by reference as though fully set forth herein.

57. In violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 *et seq.* as amended, Defendant retaliated against Plaintiff by treating Plaintiff in a manner designed to discourage the opposition of discriminatory conduct. Defendant retaliated against Plaintiff as a direct result of his opposition to unlawful practices and complaining about discrimination on the basis of race. Ultimately, Defendant terminated Plaintiff's employment in retaliation for his opposition to discrimination.

58. While Plaintiff was working for Defendant, he participated in the statutorily protected activity of opposing discriminatory practices, by complaining to Defendant about discrimination and disparate treatment based on his membership in a protected class. Therefore, Plaintiff was a covered individual.

59. Defendant became aware of Plaintiff's opposition to the unlawful discrimination when Plaintiff complained to Human Resources and management. As such, Defendant was aware of Plaintiff's opposition to illegal practices.

60. After Plaintiff engaged in such statutorily protected activity, Defendant retaliated against him for exercising his protected rights by terminating Plaintiff's employment.

61. As a direct and proximate result of Defendant's actions and/or inaction, Defendant deprived Plaintiff of income as well as other monetary and non-monetary benefits.

62. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, and related compensable damage.

63. Plaintiff is now suffering, and will continue to suffer, irreparable injury and monetary damage as a result of Defendant's retaliatory practices unless and until the Court grants him relief.

64. Defendant failed to make good faith efforts to establish and to enforce policies to prevent illegal discrimination and retaliation against its employees, including retaliation for making complaints of discrimination.

65. Defendant failed to properly train and/or otherwise inform its supervisors and employees of their duties and obligations under applicable civil rights laws, including Title VII.

66. Through its failure to take prompt and effective remedial action, in effect, Defendant condoned, ratified, and/or authorized the discrimination, harassment, and retaliation against Plaintiff.

67. Defendant's conduct was willful, wanton, malicious, and showed a complete indifference to or conscious disregard for the rights of others, including Plaintiff's rights. Thus, an

award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and others from like conduct in the future is warranted.

68.     Plaintiff is entitled to recover reasonable attorneys' fees and court costs from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal, and punitive as are fair and reasonable; for his reasonable attorneys' fees and costs incurred herein; for interest as allowed by law, both pre-judgment and post-judgment; and for such other and further legal and equitable relief as the Court deems just and proper.

### <u>COUNT III</u>
**42 U.S.C. § 1981 – Unlawful Discrimination on the Basis of Race**

69.     The above paragraphs are hereby incorporated by reference as though fully set forth herein.

70.     Plaintiff is an African-American and was employed by Defendant. By virtue of his race, Plaintiff is a member of a class of persons protected by 42 U.S.C. § 1981.

71.     In violation of § 1981, on the basis of his race (African-American), Defendant discriminated against Plaintiff in his right to make and enforce contracts, and to enjoy all benefits, privileges, terms, and conditions of that contractual relationship.

72.     Defendant subjected Plaintiff to unlawful discrimination that affected a term, condition, and/or privilege of his employment contract with Defendants.

73.     Plaintiff's working environment was permeated with discriminatory harassment and he was subjected to disparate treatment when he was denied the same privileges of employment and when Defendant terminated his employment.  Those subjecting Plaintiff to the

disparate treatment included his co-workers, his supervisors, and upper management.

74. Defendant knew or should have known of the disparate treatment and discrimination and failed to take appropriate action to prevent it.

75. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff was deprived of income, as well as other benefits, monetary and non-monetary.

76. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, damage to his self-esteem, emotional distress, mental anguish, and related compensable damage.

77. Defendant failed to make good faith efforts to establish and to enforce policies that would prevent unlawful discrimination against its employees, including discrimination on the basis of race.

78. Defendant failed to properly train and/or otherwise inform its supervisors and employees of their duties and obligations under applicable civil rights laws, including § 1981.

79. Through its failure to take prompt and effective remedial action, in effect, Defendant condoned, ratified, and/or authorized the discrimination and harassment against Plaintiff.

80. Defendant's conduct was willful, wanton, malicious, and showed a complete indifference to or conscious disregard for the rights of others, including Plaintiff's rights. Thus, an award of punitive damages is warranted in an amount that is sufficient to punish Defendant or to deter Defendant and others from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal, and punitive as are fair and reasonable; for his reasonable attorneys' fees and costs incurred herein; for interest as allowed by law, both pre-

judgment and post-judgment; and for such other legal and equitable relief as the Court deems just and proper.

<b><u>COUNT IV</u></b><br><b>42 U.S.C. § 1981 – Unlawful Retaliation</b>

81.     The above paragraphs are hereby incorporated by reference as though fully set forth herein.

82.     In violation of §1981, Defendant retaliated against Plaintiff by treating Plaintiff in a manner designed to discourage the participation in opposition of discriminatory conduct. Defendant's retaliation against Plaintiff was a direct result of Plaintiff's opposition to unlawful practices on the basis of race. Ultimately, Defendant terminated Plaintiff's employment in retaliation to his opposition to discrimination.

83.     While Plaintiff was working for Defendant, he participated in the statutorily protected activity of opposing discriminatory practice.

84.     Defendant became aware of Plaintiff's opposition to the unlawful discrimination when Plaintiff complained to Human Resources and management. As such, Defendant was aware of Plaintiff's opposition to illegal practices.

85.     After Plaintiff engaged in such statutorily protected activity, Defendant retaliated against him for exercising his protected rights by terminating Plaintiff's employment.

86.     As a direct and proximate result of Defendant's actions and/or inaction, Defendant deprived Plaintiff of income as well as other monetary and non-monetary benefits.

87.     As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, and related compensable damage.

88.     Plaintiff is now suffering, and will continue to suffer, irreparable injury and

monetary damage as a result of Defendant's retaliatory practices unless and until the Court grants him relief.

89.     Defendant failed to make good faith efforts to establish and to enforce policies to prevent illegal discrimination against its employees, including retaliation for making complaints of discrimination.

90.     Defendant failed to properly train and/or otherwise inform their supervisors and employees of their duties and obligations under applicable civil rights laws, including § 1981.

91.     Through its failure to take prompt and effective remedial action, in effect, Defendant condoned, ratified, and/or authorized the discrimination and harassment against Plaintiff.

92.     Defendant's conduct was willful, wanton, malicious, and showed a complete indifference to or conscious disregard for the rights of others, including Plaintiff's rights. Thus, an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and others from like conduct in the future is warranted.

93.     Plaintiff is entitled to recover reasonable attorneys' fees and court costs from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal, and punitive as are fair and reasonable; for his reasonable attorneys' fees and costs incurred herein; for interest as allowed by law, both pre-judgment and post-judgment; and for such other and further legal and equitable relief as the Court deems just and proper.


**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff requests a trial by jury on all counts of his Complaint triable to a jury.

## **<u>Designation of Place of Trial</u>**

Plaintiff hereby designates Kansas City, Kansas, as the place of trial.

Dated: August 9, 2019

Respectfully submitted,

s/ Kathryn Rickley
Kathryn S. Rickley, KS # 23211
Matthew E. Osman, KS # 23563
OSMAN & SMAY LLP
8500 W. 110th St., Suite 100
Overland Park, KS 66210
1-913-667-9243 (Phone)
1-866-470-9243 (Fax)
krickley@workerwagerights.com
mosman@workerwagerights.com
**ATTORNEYS FOR PLAINTIFF**